*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* PRATER/HICKMAN, Minors.

UNPUBLISHED
February 4, 2020

Nos. 348001; 348002
Jackson Circuit Court
Family Division
LC No. 17-000578-NA

Before: CAMERON, P.J., and SHAPIRO and SWARTZLE, JJ.

PER CURIAM.

In these consolidated appeals, respondent-mother and respondent-father appeal as of right the trial court's order terminating their parental rights to the minor children TP, AP, DP, and TH, under MCL 712A.19b(3)(c)(*i*) and (j). We affirm.

## I. BACKGROUND

In March 2017, the Department of Health and Human Services (DHHS) filed a petition seeking temporary custody of three of the minor children. The petition alleged that the children had been exposed to neglectful conditions in respondents' home, multiple incidents of domestic violence, and drug use. The petition further alleged that the children disclosed knowledge of drug use, respondent-mother was incarcerated, and respondent-father was facing criminal charges for a drug-related offense. Both respondents pleaded no-contest to the petition's allegations, allowing the trial court to establish jurisdiction over the three children.

In August 2017, respondent-mother gave birth to TH. Because the child tested positive for marijuana at birth, the DHHS immediately removed the child from respondents' care. Respondents subsequently pleaded no-contest to the allegations contained in the petition regarding TH.

Regarding both respondents, the DHHS prepared a case-service plan that recommended various services designed to remedy the conditions that brought the children into care. A representative of the DHHS stated in open court, with respondent-mother present:

> For both [respondent-father] and [respondent-mother], they're recommending random drug screens and the substance abuse assessments, following the

recommendations of those assessments. We're also recommending a psychological for both [respondent-father] and [respondent-mother] . . . as well as parenting classes through Family Services and Children's Aid. And finally, we are recommending individual counseling for both [respondent-father] and [respondent-mother].

In response, respondent-mother's counsel stated that respondent-mother already was

doing random drug screens through Family Services. The substance abuse assessment is scheduled for tomorrow. Parenting classes begin on Thursday. . . . I believe some domestic issues with [respondent-father] were part and parcel of this situation. So, they're beginning individual therapy right away.

Likewise, in the order of disposition entered after the April 2017 hearing, the trial court ordered both respondents to

participate in a psychological evaluation and follow the recommendations, participate in parenting courses, random drug screens, a substance abuse assessment and follow the recommendations, individual counseling, [and] sign all necessary releases.

Respondent-mother attended counseling, but the treatment records indicated that she was exhibiting a "high degree of manipulation," and the counselor concluded that she was not being "genuine" in her treatment. The trial court found that respondent-mother was not actively engaged in the counseling that she attended. Regarding the issue of domestic violence, respondents testified that they separated during the pendency of this case, but the trial court characterized the separation as "a short-lived situation designed to placate the Court, rather than a genuine desire to separate." In addition, a psychologist submitted a report concluding that respondent-mother's personality disorder, coupled with her substance abuse, created the potential that she would continue to be involved in domestic-violence incidents.

Respondent-mother tested positive for marijuana in October 2017, and respondent-father was arrested for a probation violation. Although respondent-mother disputed the accuracy of the results, she tested positive for methamphetamine multiple times in early 2018 and tested positive for a synthetic stimulant in late 2018.

After respondent-father's first substance-abuse assessment in June 2017, he was referred to engage with Insight Group, but he only attended a few sessions before ceasing participation. After another substance-abuse assessment in January 2018, respondent-father was referred to Discovery Group Services, but he never participated in services there. The trial court entered several orders in which it found that the DHHS had made reasonable efforts to reunify respondent-father with the children. Yet, respondent-father repeatedly tested positive for illegal substances throughout the pendency of the case, during those periods when he was not incarcerated. The trial court found that respondent-father tested positive or missed half of his scheduled 126 drug screens. In fact, respondent-father tested positive at least 10 times for methamphetamine and amphetamine in the three months leading up to termination. Further, when given the option in connection with his probation violation to either attend drug rehabilitation or go to jail, he chose jail.

The trial court found that statutory grounds existed to terminate respondents' parental rights under MCL 712A.19b(3)(c)(*i*) and (j). The trial court focused on the fact that both respondents still had a substance-abuse problem and that there were no signs that they would successfully address their issues within a reasonable period of time.

Regarding the children's best interests, Dr. James Henry, the Director of the Southwest Michigan Children's Trauma Assessment Center, stressed how important a sense of permanency and stability was for the children. The trial court strongly relied on the concept of permanency for each of the four children, and ultimately found that termination of respondents' parental rights was in the children's best interests.

This appeal followed.

## II. ANALYSIS

### A. DUE PROCESS—INITIAL SERVICE PLAN

Respondent-mother first argues that she was denied due process because she was not invited to participate in the case-planning process and she did not receive certain case-service plans, including the initial case-service plan. Because respondent-mother did not advance these claims in the trial court, they are unpreserved. We review unpreserved claims of constitutional error for plain error affecting substantial rights. *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). "Generally, an error affects substantial rights if it caused prejudice, i.e., affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008).

As petitioner correctly notes, there is nothing in the record to show that respondent-mother did not receive any case-service plan. While respondent-mother and petitioner agree that two case-service plans are missing from the trial court's confidential file, the fact that these plans are missing from the file does not mean that respondent-mother never received a copy of those documents. Respondent-mother has not shown how there was any plain error in this regard.

Moreover, even assuming respondent-mother never received the initial case-service plan, she cannot show that she was prejudiced in any manner. As explained above, the case-service plans that are found in the record listed various recommendations for respondent-mother. Those recommendations were consistent with what was stated at the hearing in which respondent-mother pleaded no-contest to the allegations in the petition. A representative of the DHHS stated those same requirements in open court, with respondent-mother present, and the trial court incorporated those requirements into its order of disposition entered after the April 2017 hearing. Further, respondent-mother's counsel stated on the record that she was engaged in the court-ordered services. Therefore, even if respondent-mother did not receive the initial case-service plan, it is clear that she was informed of what was expected of her before the April 2017 hearing. Indeed, these requirements continued throughout the proceedings, with respondent-mother acknowledging and participating in the recommended services. Consequently, she cannot show how her due-process rights were affected.

## B. REASONABLE EFFORTS

Respondent-father argues that DHHS failed to make reasonable efforts to rectify the conditions that led to the trial court taking jurisdiction over the children. Because he never objected to any services when the trial court adopted the service plan, this issue is unpreserved, *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012), and we review this unpreserved issue for plain error affecting substantial rights, *In re Utrera*, 281 Mich App at 8.

"[W]hen a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re Fried*, 266 Mich App 535, 542; 702 NW2d 192 (2005). The failure to provide such services can render termination of parental rights premature. See *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). In this case, respondent-father's claim that petitioner did not provide services to him is not supported by the record. The primary barrier to reunification was respondent-father's substance abuse. Although respondent-father was referred to substance-abuse services, he failed to participate in those services. Further, when given the option in connection with his probation violation to either attend drug rehabilitation or go to jail, he chose jail. While petitioner has a duty to expend reasonable efforts to provide services, "there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App at 248.

Additionally, respondent-father's claim that the trial court never specifically found that the DHHS made reasonable efforts is without merit. As indicated in its various dispositional orders, the trial court repeatedly found that the DHHS had made reasonable efforts to reunify respondent-father with the minor children. Thus, respondent-father has failed to show plain error.

## C. STATUTORY GROUNDS

Both respondents argue that the trial court erred by finding that statutory grounds existed to terminate their parental rights. This Court reviews for clear error a trial court's finding whether a statutory ground for termination has been proven by clear and convincing evidence. *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake was made. *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

A trial court must terminate parental rights if it finds that the DHHS has established a statutory ground for termination by clear and convincing evidence and if it finds from a preponderance of the evidence that termination is in the children's best interests. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). The trial court terminated respondents' parental rights under MCL 712A.19b(3)(c)(*i*) and (j), which permit termination under the following circumstances:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

* * *

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Regarding Subsection (c)(*i*), the conditions that led to the adjudication were respondents' substance abuse and instances of domestic violence. There is no question that more than 182 days had passed since issuance of the initial dispositional order. Thus, the only questions are whether clear and convincing evidence showed that the conditions that led to the adjudication continued to exist and there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering the children's ages.

Although respondent-mother disputed the results, she tested positive for methamphetamine multiple times in early 2018 and tested positive for a synthetic stimulant in late 2018. Thus, the trial court did not clearly err by finding that, despite attending a rehabilitation program, "it is clear that [respondent-mother] has not fully kicked her substance abuse problems."

Respondent-father argues that he complied "with every aspect of the treatment plan," except for those portions with which he could not comply while he was incarcerated. This assertion is contradicted by the record in this case. Respondent-father fails to address the evidence that he continually tested positive for illegal substances while not incarcerated. As the trial court found, respondent-father tested positive or missed half of his scheduled 126 screens. Furthermore, this is not a case where respondent-father tested positive early in the proceeding but demonstrated progress toward the end; on the contrary, respondent-father tested positive at least 10 times for methamphetamine and amphetamine in the three months leading up to termination, including his most recent screening in February 2019.

The trial court did not explicitly address the issue of domestic violence, but it did note the psychologist's finding that respondent-mother's personality disorder, coupled with her substance abuse, created the potential that she would continue to be involved in domestic-violence incidents. The trial court also found that although respondent-mother had attended counseling, she was not genuinely engaged. This finding was not clearly erroneous, as there was evidence in the record that respondent-mother exhibited a "high degree of manipulation" during counseling, and the counselor concluded that she was not being "genuine" in her treatment. Consequently, with evidence showing that respondent-mother still had a substance-abuse problem and had not benefited from individual counseling to address her personality disorder, the dangers of domestic

violence were still present. The fact that there had been no reported instances of domestic violence between respondents is not particularly important because from the time of adjudication, respondents had lived together for only a relatively brief amount of time due to their respective periods of incarceration and time spent in drug-rehabilitation programs. And, although respondents testified that respondent-mother had separated from respondent-father, thereby arguably removing domestic violence between them as a consideration, the trial court found this testimony not credible. Instead, the trial court characterized the separation as "a short-lived situation designed to placate the Court, rather than a genuine desire to separate." We defer to the trial court's assessment of the witnesses' credibility. *In re Newman*, 189 Mich App 61, 65; 472 NW2d 38 (1991).

Respondent-mother also avers that the trial court ignored favorable evidence and only cited evidence that showed her in a bad light. The trial court was not required to "comment on every fact in evidence" when making its ruling. *Sinicropi v Mazurek*, 273 Mich App 149, 181; 729 NW2d 256 (2006).

In sum, the trial court did not clearly err by finding that statutory grounds existed to terminate respondents' parental rights under MCL 712A.19b(3)(c)(*i*). Therefore, we need not address whether the other ground cited by the trial court also supported termination. See *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009).

## D. BEST INTERESTS

Finally, respondents argue that the trial court erred by finding that termination of their parental rights was in the children's best interests. This Court reviews for clear error a trial court's decision regarding the children's best-interests. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012).

Once a trial court has found that there are statutory grounds to terminate parental rights under MCL 712A.19b(3), the court must terminate the parent's parental rights if it is in the child's best interests. *In re White*, 303 Mich App at 713. The trial court has a duty to determine the best interests of each child individually. *In re Olive/Metts*, 297 Mich App at 42. In making a best-interest determination, the trial court "may consider the child's bond to the parent, the parent's parenting ability, [and] the child's need for permanency, stability, and finality." *Id*. 41-42 (citations omitted). "[T]he preponderance of the evidence standard applies to the best-interest determination." *In re Moss*, 301 Mich App at 83.

At the outset, contrary to respondent-mother's argument, the trial court did consider the best interests of each child individually. While the trial court focused most of its analysis on AP and DP, the trial court also expressly considered the best interests of TP and TH as well.

The trial court's ultimate findings with respect to each child are not clearly erroneous. The trial court focused on the fact that respondents each still had a substance-abuse problem and that there were no signs that they would successfully address their issues within a reasonable period of time. While respondent-father focuses on his positive parenting time with his children, he ignores his continuing substance-abuse problem. Respondent-father admitted to using methamphetamine, but tried to explain it away as a "coping" mechanism. Aside from his entirely self-serving assertion

that he would no longer use methamphetamine if the children were returned to him, nothing in the record supports this position.

The trial court strongly relied on the concept of permanency for each of the children. This is a valid consideration. See *In re Olive/Metts*, 297 Mich App at 42. We are not left with a definite and firm conviction that the trial court erred by giving this factor a dispositive amount of weight. The record contained testimony regarding how important a sense of permanency and stability was for the children. Even though the children had been in the care of DHHS for almost two years, respondents had not successfully addressed their substance-abuse problems. It was not unreasonable for the trial court to conclude that the children should not have to wait any longer on the off-chance that respondents *might*, as the trial court stated, "get their act together" sometime later.

Respondent-mother argues that the trial court did not expressly consider or weigh certain factors, such as each child's bond with her, her parenting ability, each child's need for permanency, and the suitability of alternate homes. Contrary to this assertion, the trial court did address the children's need for permanency. Further, respondent-mother has not provided any authority that a trial court must consider each of these factors and must make findings related to each of them. Indeed, this Court has said that a court "may" consider these factors. *In re Olive/Metts*, 297 Mich App at 41-42. And, as previously noted, a court need not "comment on every fact in evidence." *Sinicropi*, 273 Mich App at 181.

Affirmed.

/s/ Thomas C. Cameron
/s/ Brock A. Swartzle

-7-